UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS WAYNE JOHNSON,

       Petitioner,

vs.

Civil Action No. 15-CV-10574

HON. BERNARD A. FRIEDMAN

WILLIE SMITH,

       Respondent.

_____/

## OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

       Petitioner has filed a pro se habeas corpus petition challenging his state convictions for four counts of assault with intent to rob while armed, Mich. Comp. Laws § 750.89. Petitioner is serving a sentence of twenty-five to forty years in prison. He alleges as grounds for relief that (1) the prosecutor failed to disclose favorable evidence to the defense, and trial counsel was ineffective for failing to investigate and impeach the co-defendant with details of his plea and sentencing agreement; (2) the trial court violated his right to due process by admitting evidence of his unrelated arrest for domestic violence, and trial counsel was ineffective for failing to move to redact petitioner's statement to the police that he had a prior conviction for robbery; (3) the prosecutor violated his right to due process during closing arguments, and trial counsel was ineffective for failing to object to the prosecutor's remarks; and (4) the trial court violated his right to due process by (a) empaneling jurors who were referred to only by number and (b) failing to give a proper cautionary jury instruction. For the reasons stated below, the Court shall deny the petition.

## I. Background

The charges against petitioner arose from an incident involving four teenaged victims. Petitioner was tried before a jury in Macomb County Circuit Court where three of the teenage victims testified and the fourth victim's testimony from the preliminary examination was read into the record. The victims testified that at about 8:00 p.m. on March 10, 2011, as they were walking home from a Burger King restaurant, two men approached them from behind. The two men got in front of the victims and told them to empty their pockets. One of the suspects was a tall, young black man who wore dark clothing. The other suspect was shorter and light-skinned; he wore a red bandana or "du-rag" and a red shirt, and he had a knife. The suspects said that they had kids to feed, but the victims told the suspects that they did not have anything on them. The suspects then told the victims to cross the street. The teenagers proceeded to cross the street and go home. The suspects also walked away, but they said that they were "LA Blood." The police were called and obtained a description of the suspects from the victims.

Police officer Thomas Rebant of the Eastpointe Police Department heard about the incident when he reported for duty that night. He and other officers were told to be on the lookout for a black male and a short, white male who could be Hispanic or a light-skinned Black and who was wearing a red bandana. Rebant proceeded to investigate a complaint about some tires being slashed on Stephens Street in Eastpointe. At the Stephens Street home, two witnesses informed him that the person who had punctured the car tires was present in the upstairs flat. Petitioner's sister and her boyfriend lived in the downstairs flat. Rebant found petitioner hiding behind the furnace in the basement of the house and arrested him. Petitioner was wearing a red du-rag and a red shirt, and he had a little bit of facial hair.

Rebant told the jury that he was familiar with the Johnsons because he had arrested petitioner for domestic violence involving his sister about a week before the incident in Warren. At the booking on the domestic violence charge, petitioner informed him that he was a member of the LA Bloods, which is a Los Angeles gang.

Detective Stephen Mills of the Warren Police Department interviewed petitioner at the Eastpointe Police Department. When he informed petitioner that there was an attempted armed robbery in Warren, petitioner stated that it was not him, that he had just got out of prison for robbery, and that, when he robbed people, they come away with no money because he knew how to do it. Petitioner also mentioned that he was an LA Blood, and before he was asked about any weapons, petitioner mentioned that his co-defendant had the knife.

Continuing, Detective Mills stated that petitioner initially refused to participate in a line-up, but when Mills showed a photo array to petitioner's attorney, the attorney requested a physical line-up. A line-up was held six or seven weeks after the crime. None of the victims identified petitioner at the line-up, but there was a change in petitioner's appearance, as he had a beard at the line-up.

Petitioner's co-defendant testified at trial in leg chains and handcuffs. He stated that he was fifteen years old at the time of the crime, that he had pled guilty to four counts of assault with intent to rob while armed, and that he was confined at the Wolverine secure treatment facility. He explained that he and petitioner had approached four people coming out of a Burger King on March 10, 2011, and that petitioner had ordered the people to empty their pockets. Petitioner was carrying a butcher knife during the incident, and he told the victims that he had kids who needed to eat. But he and petitioner got nothing from the victims, and the two of them walked away after petitioner told

3

the victims to walk on the other side of the street.  On re-direct examination, the co-defendant stated that he had confessed to the robbery when he was first arrested and that he was not offered anything for his testimony.

On the only defense witness was petitioner's mother, Beverly Grundvig.  She testified that she was at the Stephens Street address before the tires were slashed and that petitioner was staying at the neighbor's home at the time, babysitting the neighbor's son.

On April 13, 2012, after deliberating for twenty-two minutes or less, the jury found petitioner guilty, as charged, of four counts of assault with intent to commit murder.  On May 10, 2012, the trial court sentenced petitioner as a habitual offender to four concurrent terms of twenty-five to forty years in prison.

Petitioner raised his habeas claims on appeal from his convictions.  At his request, the Michigan Court of Appeals remanded his case to the trial court for an evidentiary hearing on his claims that trial counsel was ineffective and that the prosecutor had failed to disclose certain evidence about the co-defendant's guilty plea.  On remand, petitioner moved for a new trial.  The trial court held a hearing on petitioner's motion and then denied the motion for new trial.  Following the remand, the Michigan Court of Appeals affirmed petitioner's conviction in an unpublished, per curiam opinion.  *See People v. Johnson*, No. 310799 (Mich. Ct. App. Nov. 14, 2013).  On April 28, 2014, the Michigan Supreme Court denied leave to appeal on the grounds that it was not persuaded to review the questions presented to it.  *See People v. Johnson*, 495 Mich. 994; 845 N.W.2d 495 (2014).  Petitioner filed the instant habeas petition on February 12, 2015.

Respondent argues that petitioner procedurally defaulted his second and third claims.  A procedural default is "a critical failure to comply with state procedural law."  *Trest v. Cain*, 522

4

U.S. 87, 89 (1997). It "is not a jurisdictional matter," *id.*, and to obtain habeas relief on procedurally defaulted claims a petitioner "must establish cause and prejudice for the defaults" and "also show that the claims are meritorious." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010) (internal citation omitted).

Petitioner's claims lack merit for the reasons given below. And because "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), the Court "cut[s] to the merits here, since the cause-and-prejudice analysis adds nothing but complexity to the case." *Babick*, 620 F.3d at 576.

## II. Legal Standards

### A. Generally

The following standard applies in federal habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S.

12, 15-16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's cases but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (internal citation omitted); *see also Williams*, 529 U.S. at 409. Section 2254(d) "thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and 'demands that state-court decisions be given the benefit of the doubt.' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.*" Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or, . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of

6

his claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Further, it "does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of a state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).

Further, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**B. Ineffective-Assistance-of-Counsel Claims**

Three of petitioner's grounds for relief include allegations that his trial counsel was ineffective. To prevail on a claim about trial counsel, a defendant must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*

*v. Washington*, 466 U.S. 668, 687 (1984).  An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.  The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.

The prejudice prong of the *Strickland* test "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*.  The defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).  In a habeas case, moreover, review of an ineffective assistance of counsel claim

> is "doubly deferential," *Cullen v. Pinholster*, 563 U.S. 170, 190, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow*, 571 U.S. ——, ——, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); internal quotation marks omitted).  In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Burt*, *supra*, 134 S.Ct. at 13.

*Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam).

## III.  Analysis

### A.  Brady and Trial Counsel

#### 1.  The Brady Claim

In his first claim, petitioner alleges that the prosecutor failed to disclose that petitioner's co-defendant agreed to testify against petitioner and pled guilty to the same charges that petitioner faced in exchange for a sentence as a juvenile.  The trial court held an evidentiary hearing on this issue and determined that petitioner failed to establish a *Brady* violation.  The court stated that the prosecution did not suppress the evidence and even if the co-defendant's plea was not disclosed to the defense, there was no reasonable possibility that the outcome of the trial would have been different.

The Michigan Court of Appeals agreed with the trial court that there was no *Brady* violation.  The Court of Appeals stated that, because the co-defendant did not receive any benefit in exchange for his testimony in petitioner's case, the prosecution did not possess favorable impeachment evidence.  The Court of Appeals also stated that there was no indication in the record that the prosecutor suppressed any details of the co-defendant's plea agreement or that defense counsel could not have obtained those details with reasonable diligence.  Finally, the Court of Appeals stated that, even if the details of the co-defendant's plea agreement had been presented to the jury, there was no reasonable probability that the result of the proceeding would have been different because the agreement did not provide the co-defendant with any motivation to lie during his testimony against petitioner.

##### a.  Clearly Established Federal Law

The Supreme Court held in *Brady* that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to

guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373

U.S. at 87.  There are three components to a true *Brady* claim:  "The evidence at issue must be

favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence

must have been suppressed by the State, either willfully or inadvertently; and prejudice must have

ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  Since *Brady*, the Supreme Court has

> held that the duty to disclose [favorable] evidence is applicable even
> though there has been no request by the accused, *United States v.
> Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and
> that the duty encompasses impeachment evidence as well as
> exculpatory evidence, *United States v. Bagley*, 473 U.S. 667, 676,
> 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).  Such evidence is material "if
> there is a reasonable probability that, had the evidence been disclosed
> to the defense, the result of the proceeding would have been
> different." *Id.*, at 682, 105 S.Ct. 3375; *see also Kyles v. Whitley*, 514
> U.S. 419, 433–434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

*Id*. at 280.  As the Supreme Court explained in *Banks v. Dretke*, 540 U.S. 668 (2004), "the

materiality standard for *Brady* claims is met when 'the favorable evidence could reasonably be taken

to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id*. at 698

(quoting *Kyles*, 514 U.S. at 435).

### b.  Application

Petitioner contends that the prosecution failed to disclose before trial that his

co-defendant agreed to testify against petitioner and pled guilty to the same charges as petitioner in

exchange for a sentence as a juvenile.  Evidence about the co-defendant's plea and sentencing

agreement was favorable to the defense because it provided a basis for impeaching the co-defendant

with his motivation for testifying against petitioner.  The first *Brady* component is satisfied.

The next question is whether the prosecution actually suppressed the favorable

evidence.  Petitioner has attached to this habeas petition the transcript of his co-defendant's guilty

plea and sentence proceeding.  The transcripts indicate that the co-defendant pled guilty, as charged, to the same crimes for which petitioner was tried, namely, four counts of assault with intent to rob while armed.  The transcripts also indicate that the prosecutor did not promise the co-defendant anything for his testimony against petitioner, but there was a *Cobbs* agreement that the trial court would sentence the co-defendant as a juvenile.[1]  (Pet. for Writ of Habeas Corpus, App. 1 at 3 and App. 2 at 3-4.)

At trial, the prosecutor elicited the co-defendant's testimony that the prosecutor did

---

[1] Pursuant to *People v. Cobbs*, 443 Mich. 276; 505 N.W.2d 208 (1993), state trial judges in Michigan may participate in sentencing discussions with the parties in the following manner:

> At the request of a party, and not on the judge's own initiative, a judge may state *on the record* the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense.
>
> *    *    *
>
> The judge's preliminary evaluation of the case does not bind the judge's sentencing discretion, since additional facts may emerge during later proceedings, in the presentence report, through the allocution afforded to the prosecutor and the victim, or from other sources.  However, a defendant who pleads guilty or nolo contendere in reliance upon a judge's preliminary evaluation with regard to an appropriate sentence has an absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation.

*Id.*, 443 Mich. at 283; 505 N.W.2d at 212 (emphasis in original; footnote omitted).

Petitioner's co-defendant was a juvenile when he committed the crime for which he ultimately pled guilty and for which petitioner was charged and tried.  But he was charged as an adult.  Thus, the trial judge had "the option of imposing either a juvenile disposition, an adult sentence, or a blended sentence, i.e., a delayed sentence pending defendant's performance under the terms provided by a juvenile disposition."  *People v. Petty*, 469 Mich. 108, 113; 665 N.W.2d 443, 446-47 (2003) (interpreting Mich. Comp. Laws § 712A.18(1)(n), which currently is Mich. Comp. Laws § 712A.18(1)(m)).

not promise the co-defendant anything in return for his testimony against petitioner. This was consistent with the co-defendant's plea and sentencing agreement that the co-defendant agreed, on his own accord, to testify against petitioner. There was no quid pro quo for the co-defendant's testimony.

However, the prosecutor did not elicit any trial testimony regarding the trial court's *Cobbs* agreement to sentence the co-defendant as a juvenile. Although this omission is troubling, petitioner does not allege that the prosecutor deliberately deceived the jury by presenting known false evidence. Instead, he claims that the prosecutor withheld favorable evidence from him, and the record indicates that the prosecution did not suppress evidence from the defense. Defense counsel testified at petitioner's post-conviction hearing that, although she was not aware of the details of the co-defendant's plea agreement, she had discussed all the information with the prosecutor. She also said that she knew or assumed that the co-defendant had been charged as an adult and that he was sentenced as a juvenile. (3/14/13 Mot. Hr'g, at 10-12.) Additionally, one of petitioner's previous attorneys apparently was present when the co-defendant pled guilty. (*Id*. at 24-26.)

Even if the prosecutor failed to inform defense counsel that the trial court had promised the co-defendant a juvenile sentence, details of the co-defendant's plea and sentencing agreement were readily available to defense counsel. She could have requested the transcript of the co-defendant's plea and sentence proceedings, and she could have viewed the co-defendant's Macomb County docket sheet, which discloses the details of the co-defendant's plea and sentence. *See* Pet. for Writ of Habeas Corpus, App. 3. There is "no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory

12

information, or where the evidence is available . . . from another source, because in such cases there

is really nothing for the government to disclose." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998)

(internal quotation marks and end citations omitted).

Finally, even assuming that the prosecution suppressed evidence that the

co-defendant was sentenced as a juvenile, there was no prejudice. Although the victims were unable

to identify petitioner and the co-defendant was a key witness for the prosecution, the jury was made

aware that the co-defendant confessed to the police when he was first arrested (4/12/12 Trial Tr. at

66), and one of the victims identified the co-defendant at a pretrial hearing (4/11/12 Trial Tr. at 143).

All four victims corroborated the co-defendant's testimony. Additionally, petitioner was located a

few hours after the crime wearing the distinctive red shirt and bandana or du-rag described by the

victims. He subsequently made an admission about the weapon used during the crime although the

police had not asked him about any weapons. There is no reasonable probability that the jurors

would have discounted the co-defendant's testimony as untruthful on the basis that he was promised

leniency at sentencing.

Petitioner has not satisfied all three components of a true *Brady* claim. Therefore,

he is not entitled to habeas relief on the basis of this claim.

### 2. The Related Claim about Trial Counsel

Petitioner next that his trial attorney was ineffective for failing to investigate the

co-defendant's plea and sentencing agreement and for failing to impeach the co-defendant with the

details of his plea agreement. The trial court stated in its order denying petitioner's motion for new

trial that counsel's failure to question the co-defendant about his plea agreement could be seen as

deficient, but that there was no reasonable probability the outcome of the case would have been

13

different absent counsel's allegedly deficient performance.

The Michigan Court of Appeals agreed that petitioner had failed to establish a meritorious claim of ineffective assistance of counsel.  In reaching this conclusion, the Court of Appeals stated that, because the agreement did not provide the co-defendant with any motivation to lie during his testimony at petitioner's trial, there was no reasonable probability that introducing the details of the plea agreements would have affected the outcome of the proceeding.

Although the co-defendant was sentenced before petitioner's trial, the *Cobbs* agreement to sentence him as a juvenile could have been part of his motivation for testifying against petitioner.  Therefore, defense counsel's failure to question the petitioner's co-defendant about his plea and sentencing agreement arguably was deficient performance.  However, petitioner has failed to show that the outcome of his trial would have been different had the jurors known that the trial court opted to sentence the co-defendant as a juvenile, not as an adult.  The evidence at trial, as summarized by the Michigan Court of Appeals, indicated that

> [a]ll four victims testified that one of the two assailants wore a red bandana, and three of the victims testified that the same assailant wore other pieces of red clothing.  A police officer testified that when he arrested defendant approximately five hours after the incident, defendant was wearing a red bandana and a red shirt.  Two of the victims heard the assailants affiliate themselves with the gang "LA Blood."  During defendant's interview with the police on the night of the incident, defendant said that he was a member of the LA Bloods.  In addition, defendant told the police that his codefendant "had the knife," without being told that the assault involved the use of a knife.

*Johnson*, 2013 WL 6037163, at *3.

Given the strength of this evidence, the state courts reasonably determined that trial counsel's failure to impeach petitioner's co-defendant with his plea and sentencing agreement did not prejudice the defense.  Therefore, petitioner has no right to habeas relief on his claim about trial

14

counsel's alleged failure to investigate the co-defendant's plea agreement or counsel's failure to impeach the co-defendant with his plea agreement.

### B.  Evidence of Petitioner's Unrelated Arrest and His Prior Conviction for Robbery

Petitioner next argues that the trial court violated his right to due process by admitting evidence of his unrelated arrest for domestic violence about one week before the incident for which he was on trial.   Petitioner asserts that the evidence was inadmissible and highly prejudicial character evidence.   Petitioner further argues that trial counsel was ineffective for failing to move to redact petitioner's admission to the police that he had a prior robbery conviction and had recently been released from prison.

#### 1.  Evidence of Other Illegal Acts

The issue of petitioner's arrest for domestic violence arose when the prosecutor asked Officer Rebant whether he was familiar with the Johnson family.   Officer Rebant answered: "[A]lmost a week [before the incident in Warren], I arrested Tommy Johnson for domestic violence on his sister."  Defense counsel objected, but the trial court overruled the objection.  (4/12/12 Trial Tr. at 11.)  Rebant then said that petitioner had been living with his sister at the house on Stephens Street in Eastpointe before he was arrested for domestic violence.  Rebant indicated that, on March 11, 2011, he assumed that petitioner was still in Macomb County Jail.  Rebant noted that a condition of bond on the domestic violence charge was that petitioner was not allowed to be within 1,000 feet of the Stephens Street house or his sister.  (*Id*. at 12-14, 19, 22.)  The order setting forth the conditions of bond in the domestic violence case was admitted in evidence at petitioner's trial (*id*. at 14-15), and the prosecutor mentioned petitioner's arrest for domestic violence during his closing argument (4/13/12 Trial Tr. at 12-13).

Additional prior acts evidence was admitted when Detective Stephen Mills testified about his interview with petitioner after the incident in Warren. Petitioner informed Detective Mills during the interview that he had recently been released from prison on a robbery charge. Petitioner also stated that he knew how to commit a robbery, and when he does commit one, the people go away with no money because he knew how to do it. (4/12/12 Trial Tr. at 33-34.) The prosecutor repeated this testimony in his closing argument. (4/13/12 Trial Tr. at 14-15.)

Petitioner asserts that testimony about his prior arrest for domestic violence and his prior conviction for robbery constituted inadmissible character evidence under the Michigan Rules of Evidence. The Michigan Court of Appeals reviewed petitioner's claim for "plain error" because petitioner did not preserve his claim for appellate review. The Court of Appeals then determined that, although evidence of petitioner's arrest for domestic violence and his prior conviction for robbery were inadmissible under the Michigan Rules of Evidence, petitioner was not prejudiced by the admission of the challenged evidence.

This Court finds no merit in petitioner's claim because it raises an issue of state law, and "errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, [usually may not] be questioned in a federal habeas corpus proceeding." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). "To the extent that any testimony and comments violated Michigan's rules of evidence, such errors are not cognizable on federal habeas review." *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

A state trial court's evidentiary error can rise to the level of a federal constitutional

claim warranting habeas corpus relief if the error was "so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Estelle*, 502 U.S. at 69-70). But petitioner is complaining of propensity evidence, and "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, the state courts' rejection of petitioner's claim was not contrary to, or an unreasonable application of, any Supreme Court decision under § 2254 (d)(1), and petitioner has no right to relief on the basis of his evidentiary claim.

### 2. Trial Counsel's Failure to Move to Redact Information

Petitioner argues that his trial attorney was ineffective for failing to move to redact petitioner's admission to Detective Mills that he was previously convicted of robbery and had recently been released from prison. The Michigan Court of Appeals rejected this claim on the basis that defense counsel's failure to object could have been sound trial strategy. The Court of Appeals also opined that there was not a reasonable probability that the result of the proceeding would have been different if defense counsel had objected to the police officer's testimony.

Defense counsel's failure to move to redact petitioner's comment to Detective Mills that he was recently released from prison on a robbery charge and that he knew how to commit a robbery likely was deficient performance, given the nature of the charge for which petitioner was on trial. But, as the Michigan Court of Appeals recognized, there is no substantial likelihood that the deficient performance prejudiced the defense, given the other evidence in the case, which included the co-defendant's testimony that he and petitioner committed the assault; the four victims' corroborating testimony; the fact that, a few hours after the incident, petitioner was discovered

17

wearing the distinctive clothing described by the victims; and the police officers' testimony that petitioner blamed his co-defendant for having a knife during the incident, although he had not been asked about a weapon.

In the state court's words, there was "strong evidence that defendant perpetrated the crimes, wholly independent of the impermissible references to defendant's criminal history." *Johnson*, 2013 WL 6037163, at *3. Consequently, defense counsel's failure to move to redact petitioner's statement to Detective Mills did not prejudice the defense, and petitioner has no right to relief on the basis of his claim about trial counsel's deficient performance.

### C. The Prosecutor's Closing Argument

The third habeas claim is that the prosecutor violated petitioner's right to due process during closing arguments. Specifically, petitioner contends that the prosecutor disparaged petitioner's exercise of his right to a trial and made an improper civic duty argument. Petitioner argues in the alternative that trial counsel was ineffective for failing to object to the prosecutor's remarks.

The Michigan Court of Appeals reviewed petitioner's claim about disparagement of his right to go to trial for plain error because petitioner did not object to the remark at trial. The Court of Appeals then concluded that plain error did not occur and that trial counsel was not ineffective for failing to object to the argument. As for petitioner's civic duty argument, the Michigan Court of Appeals agreed that the prosecutor's remarks constituted prosecutorial misconduct. The Court of Appeals nevertheless concluded that petitioner was not prejudiced by the remarks because the trial court's instructions to the jury alleviated the prejudicial effect of the inappropriate prosecutorial arguments.

18

### 1. Clearly Established Federal Law

Prosecutors must "refrain from improper methods calculated to produce a wrongful conviction," *Viereck v. United States*, 318 U.S. 236, 248 (1943), but "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "[T]he standard to be applied to claims of prosecutorial misconduct is whether the conduct was 'so egregious . . . as to render the entire trial fundamentally unfair.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)).

When the issue is the prosecutor's remarks during closing argument, the "clearly established Federal law" is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), in which the Court stated:

> [I]t "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 699 F.2d [1031, 1036 (11th Cir. 1983)]. The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.*, at 642, 94 S.Ct., at 1871.

A reviewing court must "analyz[e] disputed [prosecutorial] comments in the context of the trial as a whole and recogniz[e] that inappropriate comments alone do not justify reversal where the proceedings were 'otherwise fair.'" *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)).

"In deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the harmless error standard." *Pritchett*, 117 F.3d at 964 (citing

*Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979)).   An error is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict."   *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

### 2.  Disparaging the Exercise of the Right to Trial

Petitioner maintains that the following remarks by the prosecutor violated his right to due process and disparaged his exercise of the right to a trial:

> [The co-defendant] took the stand.  He told the truth about himself.  Told you that he was involved in this incident.  He told you that he assisted the Defendant in the robbery.
>
> He even opened up and admitted to other things that weren't relevant that [defense counsel] was asking about.  The fact that he got high.  The fact that he was a runaway.
>
> He even admitted to later on that night after the robbery the malicious destruction of property in the car.  He took blame for that, too.
>
> So he told the truth about himself. . . .
>
> *    *    *
>
> Now you heard that [the co-defendant] took responsibility for his actions.  He pled to all four counts of assault with intent to rob while armed.  The same charges that the Defendant has been charged with.
>
> . . . . He's taking responsibility for his actions.

(4/13/12 Trial Tr. at 10-11.)  Petitioner contends that these remarks invited the jurors to convict him because he exercised his right to a trial and failed to admit guilt like his co-defendant did.

Petitioner had a Sixth Amendment right to trial by jury, and prosecutors may not "use the defendant's exercise of specific fundamental constitutional guarantees against him at trial."

*Burns v. Gammon*, 260 F.3d 892, 896 (8th Cir. 2001). But the jury would not necessarily have understood the remarks quoted above to be a disparagement of petitioner's exercise of the right to a trial. In fact, the trial court informed the jurors during voir dire that "[t]he right to a jury trial is an ancient tradition and part of our heritage," that an accused person has the right to a trial by jury, and that petitioner had pleaded not guilty to the charges. (4/11/12 Trial Tr. at 11, 20.)

Even if the prosecutor's remarks were an improper comment on petitioner's exercise of the right to go to trial, the majority of the prosecutor's closing argument focused on the evidence. *See, e.g.*, 4/13/12 Trial Tr. at 7-9 (discussing the victims' testimony and their credibility); *id*. at 11-15 (discussing the police officers' testimony and their credibility); *id*. at 15-18 (discussing the co-defendant's direct evidence and weaknesses in petitioner's defense); *id*. at 18-24 (discussing the prosecution's burden of proof and elements of the crime). When the prosecutor's disputed comments are viewed in the context of the his entire closing argument, it is clear that he encouraged the jury to find petitioner guilty on the basis of the evidence, not the fact that petitioner failed to admit guilt like the co-defendant did. Thus, to the extent the prosecutor's comments about the co-defendant's guilty plea and acceptance of responsibility for his crimes were inappropriate, the comments were not so egregious as to deprive petitioner of due process or a fair trial.

### 3. Civic Duty Argument

Petitioner contends that the prosecutor made an improper civic duty argument when he stated that:

> [The co-defendant] deserves justice. It's not fair that he gets convicted of these crimes and that the Defendant would get away with it when the defendant was involved with [the co-defendant].
>
> And I ask you to give justice to the defendant. Hold him accountable for his actions. This type of behavior is not tolerated.

21

I just ask you to do the right thing, and hold the Defendant accountable for his actions and find him guilty as charged of the four counts of assault with intent to rob while armed.

(4/13/12 Trial Tr. at 24-25.)

"It is improper for a prosecutor to suggest that a jury has a civic duty to convict." *Thornburg v. Mullin*, 422 F.3d 1113, 1134 (10th Cir. 2005). "Appeals to the jury's emotion or sense of vengeance 'call[] into question the integrity of the criminal justice system' by encouraging the jury to convict based on outrage, and not on evidence." *Wilson v. Sirmons*, 536 F.3d 1064, 1121 (10th Cir. 2008) (quoting *Bland v. Sirmons*, 459 F.3d 999, 1028 (10th Cir. 2006)). Nevertheless, prosecutors may appeal to the jurors' sense of justice, *Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009) (citing *Coe*, 161 F.3d at 351), and a prosecutor's comment that justice requires holding the defendant accountable for his crimes, while not advisable, does not cross the line to impropriety. *See United States v. Herron*, 199 F. App'x 472, 479 (6th Cir. 2006).

Even assuming that the prosecutor crossed the line to impropriety when he suggested that it would be unfair to treat petitioner differently from his convicted co-defendant, the trial court instructed the jurors not to let sympathy or prejudice influence their decision. (4/13/12 Trial Tr. at 40.) The trial court also explained to the jurors that the attorneys' arguments were not evidence and that the jurors should base their verdict on the admissible evidence, which consisted of the witnesses' testimony and the exhibits. (*Id.* at 42-44.) "[J]uries are presumed to follow their instructions," *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), and there is no reason to believe that the jury did not follow the trial court's instructions in this case. Therefore, the prosecutor's improper argument that petitioner's co-defendant deserved justice was dissipated by the trial court's jury instructions and rendered the prosecutorial impropriety harmless.

### 4. Counsel's Failure to Object

Petitioner next contends that his trial attorney was ineffective for failing to object to the prosecutor's closing remarks about the co-defendant deserving justice and taking responsibility for his crime. The Court finds no merit in this contention because defense counsel may not have wanted to call further attention to the remarks by objecting. A strategic decision not to object for fear of drawing the jury's attention to damaging remarks is reasonable. *See Hodge v. Haeberlin*, 579 F.3d 627, 641 (6th Cir. 2009); *Cobb v. Perini*, 832 F .2d 342, 347-48 (6th Cir. 1987). And in this case, it appears from the record that defense counsel chose to respond to the prosecutor's remarks in her own closing argument, rather than interrupting the prosecutor's argument. For example, she pointed out that, although the prosecutor had insinuated that the victims deserved justice, that was not enough to convict petitioner. (4/13/12 Trial Tr. at 27-28.)

Petitioner has failed to show that his trial attorney's performance was deficient and that the allegedly deficient performance prejudiced his defense. Therefore, he is not entitled to habeas relief on the basis of counsel's failure to object to the prosecutor's closing remarks.

### D. The Voir Dire Proceeding

Finally, petitioner argues that the trial court violated his right to due process by empaneling jurors who were referred to only by number. The Michigan Court of Appeals perceived no error with respect to this issue.

This Court finds no merit in petitioner's argument because he has not cited any Supreme Court decision that requires trial courts to refer to prospective jurors by name and not by number. Further, the Sixth Circuit has stated that

> there is no constitutional right to a public jury. The Sixth Amendment provides defendants with a right to a public trial by an

23

> impartial jury, but it does not guarantee a right to a public jury. *See* U.S. Const. amend. VI. Thus, the text of the Constitution does not warrant holding that defendants have a right to be informed of jurors' identities. The absence of any right to juror identification is further demonstrated by Founding-era evidence indicating that such a right was not intended to be part of the Constitution. *See* Kory A. Langhofer, Comment, *Unaccountable at the Founding: The Originalist Case for Anonymous Juries*, 115 Yale L.J. 1823, 1826-31 (2006). There may be instances in which an anonymous jury is empaneled in such a way as to jeopardize constitutional rights-such as the right to a presumption of innocence-but an anonymous jury is not a constitutional violation in and of itself.

*United States v. Lawson*, 535 F.3d 434, 440–41 (6th Cir. 2008), as amended Oct. 9, 2008 (emphasis in original).

Moreover, in the present case the prosecutor indicated during voir dire that he had the names and occupations of the prospective jurors (4/11/12 Trial Tr. at 36), and, as the Michigan Court of Appeals pointed out, "the trial court, prosecutor, and defense counsel were free to ask extensive questions about the jurors' backgrounds and attitudes." *Johnson*, 2013 WL 6037163, at *4. This court agrees with the Michigan Court of Appeals that "[t]he trial court's mere use of juror numbers, standing alone, did not render the jury 'anonymous' in this case," and that there was "no error with respect to this issue." *Id*.

Petitioner nevertheless asserts that the trial court erred by failing to give a proper cautionary jury instruction that referring to the jurors by number was a uniform practice and not a reflection on petitioner's guilt or dangerousness. But "[t]he decision to empanel an anonymous jury 'is within the sound discretion of the trial court,'" *Lawson*, 535 F.3d at 439 (quoting *United States v. Talley*, 164 F.3d 989, 1001 (6th Cir. 1999), and the jury would not necessarily have concluded from the trial court's method of conducting voir dire that the trial court had prejudged the case and concluded that petitioner was dangerous. In fact, the trial court explained soon after fourteen people

were seated in the jury box that petitioner was presumed to be innocent and that the jurors should

not conclude from the charges that petitioner was guilty.  (4/11/12 Trial Tr. at 20.)  The Court

concludes that the trial court was not required to give a specific jury instruction explaining the

court's decision to refer to the jurors by number and not by name.  Petitioner's claim lacks merit and

does not warrant habeas relief.

## IV.  Conclusion and Order

The state appellate court's rejection of petitioner's claims was not contrary to clearly

established federal law, an unreasonable application of clearly established federal law, or an

unreasonable determination of the facts.   The state appellate court's decision also was not "so

lacking in justification that there was an error . . . beyond any possibility for fairminded

disagreement."  *Harrington*, 562 U.S. at 103.  Accordingly,

IT IS ORDERED that petitioner's application for a writ of habeas corpus is denied.

IT IS FURTHER ORDERED that, because reasonable jurists could not debate

whether petitioner's claims deserve encouragement to proceed further, the Court declines to grant

a certificate of appealability on any of petitioner's claims.

IT IS FURTHER ORDERED that petitioner may not proceed in forma paueris on

appeal, as an appeal in this matter could not be taken in good faith.  *See* 28 U.S.C. § 1915(a)(3).

_s/ Bernard A. Friedman_____
BERNARD A. FRIEDMAN

25

                                    SENIOR UNITED STATES DISTRICT JUDGE

Dated: July 14, 2017
        Detroit, Michigan